1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4   MANUEL CASTRO,                          No. C 13-5330 CW

5         Plaintiff,                        ORDER GRANTING
                                            MOTION TO STAY
6      v.                                   PROCEEDINGS
                                            (Docket No. 19)
7   CINTAS CORPORTATION NO. 3, a
    Nevada Corporation,

8         Defendant.
                                     /
9   ═══════════════════════════════

10       Plaintiff Manuel Castro brought this putative class action

11  against his former employer, Defendant Cintas Corporation No. 3,

12  alleging various wage-and-hour violations.  Defendant Cintas moves

13  to compel arbitration of Plaintiff's individual claims and to stay

14  these proceedings pending the outcome of that arbitration.

15  Plaintiff opposes the motion.  The Court took the matter under

16  submission without oral argument and now grants the motion.

17                            BACKGROUND

18       Cintas, a Washington corporation with headquarters in Ohio,

19  provides a variety of specialized services to businesses

20  throughout the United States and Canada.  In April 2006, it hired

21  Plaintiff to work as a sales representative at its Gilroy,

22  California location.  Plaintiff held that position until Cintas

23  terminated his employment in August 2013.  He filed this action in

24  Santa Clara County Superior Court two months later, alleging that

25  Cintas violated various provisions of the California Labor Code by

26  failing to provide its employees with meal and rest breaks,

27  overtime pay, and timely payments of final wages.  He also

28  asserted claims against Cintas under California's Unfair

United States District Court
For the Northern District of California

1  Competition Law, Bus. & Prof. Code §§ 17200 et seq., and the

2  Private Attorneys General Act (PAGA), Cal. Labor Code §§ 2698 et

3  seq.  Cintas removed the action to federal court in November 2013.

4      One month later, instead of filing an answer or a motion to

5  dismiss, Cintas filed the instant motion to stay.  In its motion,

6  it contends that Plaintiff's individual claims are subject to

7  binding arbitration under an agreement which he signed in May

8  2012, while he was a Cintas employee.  That agreement, entitled

9  "California Employment Agreement for Sales, Services, and

10 Marketing Personnel," contains the following provision:

11            8.   EXCLUSIVE METHOD OF RESOLVING DISPUTES OR
                  DIFFERENCES
12
              Should any dispute or difference arise between
13            Employee and Employer concerning whether
              either party at any time violated any duty,
14            right, law, regulation, public policy, or
              provision of this Agreement, the parties will
15            confer and attempt in good faith to resolve
              promptly such dispute or difference.  The
16            rights and claims of Employer covered by this
              Section 8, including the arbitration
17            provisions below, include Employer's claims
              for damages, as well as reasonable costs and
18            attorneys' fees, caused by Employee's
              violation of any provision of this Agreement
19            or any law, regulation or public policy.  The
              rights and claims of Employee covered by this
20            Section 8, including the arbitration
              provisions below, include Employee's rights or
21            claims for damages as well as reasonable costs
              and attorneys' fees, caused by Employer's
22            violation of any provision of this Agreement
              or any law, regulation or public policy.  The
23            rights and claims of Employee covered by this
              Section 8, including the arbitration
24            provisions below, specifically include but are
              not limited to all of Employee's rights or
25            claims arising out of or in any way related to
              Employee's employment with Employer, such as
26            rights or claims arising under [federal
              employment statutes], state or local laws
27            regarding employment, common law theories such
              as breach of express or implied contract,
28            wrongful discharge, defamation, and negligent

                              2

**United States District Court**
For the Northern District of California

1
2
3
4
5

> or intentional infliction of emotional
> distress[.]  Excluded from the arbitration
> provisions below in this Section 8 are all
> unemployment benefits claims, workers'
> compensation claims, claims for a declaratory
> judgment or injunctive relief concerning any
> provision of Section 4 of this Agreement
> [pertaining to Employee's non-disclosure
> obligations], and claims not lawfully subject
> to arbitration . . . .

6
7
8
9
10
11
12
13
14

> If any dispute or difference remains
> unresolved after the parties have conferred in
> good faith, either party desiring to pursue a
> claim against the other party will submit to
> the other party a written request to have such
> claim, dispute or difference resolved through
> impartial and confidential arbitration.  The
> place of arbitration shall be in the county
> and state where Employee currently works for
> Employer or most recently worked for Employer.
> . . . Arbitration under this Agreement will be
> conducted in accordance with the [American
> Arbitration Association]'s National Rules for
> Resolution of Employment Disputes, except if
> such AAA rules are contrary to applicable
> state or federal law, applicable law shall
> govern.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Docket No. 21, V. Sharpe Decl., Ex. A, Employment Agreement, at 5.

The agreement also stated that Plaintiff would receive an increase

in pay in exchange for signing the agreement.  Id. at 2.

Plaintiff signed the agreement on May 11, 2012.  Id. at 7.  He had

previously signed another employment agreement with an identical

arbitration provision in May 2011 and signed similar agreements in

April 2010, April 2009, and April 2006.  Docket No. 27, V. Vig

Decl. ¶¶ 5-7, Ex. A.

                            LEGAL STANDARD

     Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et

seq., written agreements that controversies between the parties

shall be settled by arbitration are valid, irrevocable and

enforceable.  9 U.S.C. § 2.  A party aggrieved by the refusal of

3

**United States District Court**
For the Northern District of California

another to arbitrate under a written arbitration agreement may petition the district court which would, save for the arbitration agreement, have jurisdiction over that action, for an order directing that arbitration proceed as provided for in the agreement.  Id. § 4; see also Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1005 (9th Cir. 2010) (noting that the party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence).  The FAA further provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement
> . . . .

9 U.S.C. § 3.  If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  Id. § 4.  "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986) (citations omitted).

The FAA reflects a "liberal federal policy favoring arbitration agreements."  AT&T Mobility LLC v. Concepcion, 131 S.

United States District Court
For the Northern District of California

1  Ct. 1740, 1745 (2011) (citations and internal quotation marks

2  omitted).  A district court must compel arbitration under the FAA

3  if it determines that: (1) there is a valid agreement to

4  arbitrate; and (2) the dispute falls within its terms.  Stern v.

5  Cingular Wireless Corp., 453 F. Supp. 2d 1138, 1143 (C.D. Cal.

6  2006) (citing Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d

7  1126, 1130 (9th Cir. 2000)).  However, the FAA "permits agreements

8  to arbitrate to be invalidated by 'generally applicable contract

9  defenses, such as fraud, duress, or unconscionability,' but not by

10 defenses that apply only to arbitration or that derive their

11 meaning from the fact that an agreement to arbitrate is at issue."

12 Concepcion, 131 S. Ct. at 1746; see also Kilgore v. KeyBank, N.A.,

13 673 F.3d 947, 963 (9th Cir. 2012) ("Concepcion did not overthrow

14 the common law contract defense of unconscionability whenever an

15 arbitration clause is involved.").

16                               DISCUSSION

17      Plaintiff contends that Cintas lacks the authority to enforce

18 the May 2012 employment agreement because it was not a party to

19 that agreement.  He further contends that, even if Cintas has the

20 authority to enforce the agreement, the arbitration provision is

21 not enforceable because it is unconscionable.  Finally, Plaintiff

22 argues that, regardless of whether or not the arbitration

23 provision is enforceable, his claims in this action fall outside

24 the scope of the provision.  As explained further below, none of

25 these arguments is persuasive.

26 I.   Cintas' Authority to Enforce the Employment Agreement

27      Plaintiff asserts that Cintas cannot enforce the employment

28 agreement against him because it was not a party to the agreement.

                                   5

**United States District Court**
For the Northern District of California

1 He notes that the first page of the agreement refers to "Cintas

2 Corporation" as the "Employer" -- not Cintas Corporation No. 3,

3 the entity named as a Defendant in this suit and whose name

4 appeared on the paychecks he received when he was a Cintas

5 employee.

6      This argument ignores the first sentence of the agreement,

7 which specifically states that the term "Employer" shall be used

8 to refer not only to Cintas Corporation but also to its "agents,

9 business units, wholly-owned subsidiaries and affiliated

10 companies."  Sharpe Decl., Ex. A, at 1.  Plaintiff does not

11 dispute that Cintas Corporation No. 3, the entity he has sued, is

12 a wholly owned subsidiary of Cintas Corporation.  Accordingly,

13 Cintas Corporation No. 3 may enforce the employment agreement

14 here.  See Michaelis v. Schori, 20 Cal. App. 4th 133, 139 (1993)

15 (finding that an "arbitration agreement, although not signed by

16 defendant [] or plaintiff [], nevertheless covers them" because

17 they were made parties to the agreement through a clause binding

18 all agents and associates of the signatory).

19 II.  Unconscionability

20      Plaintiff contends that the employment agreement is

21 unconscionable under California law.  Cintas denies that the

22 agreement is unconscionable and, further, asserts that the

23 agreement should be governed by Ohio law.  Because

24 unconscionability is a question of state law, the Court must

25 resolve the parties' choice-of-law dispute before deciding whether

26 the agreement is unconscionable.

27

28

**United States District Court**
For the Northern District of California

A.    Choice of Law

Cintas contends that Ohio law governs the employment

agreement, citing the following provision of the agreement:

> THIS AGREEMENT WILL BE INTERPRETED, GOVERNED
> AND ENFORCED ACCORDING TO THE FEDERAL
> ARBITRATION ACT AND THE SUBSTANTIVE LAW (NOT
> INCLUDING CHOICE OF LAW PRINCIPLES OR RULES)
> OF THE STATE OF OHIO.

Sharpe Decl., Ex. A, Employment Agreement, at 5.

"Before a federal court may apply state-law principles to

determine the validity of an arbitration agreement, it must

determine which state's laws to apply.  It makes this

determination using the choice-of-law rules of the forum state" --

in this case, California.  Pokorny v. Quixtar, Inc., 601 F.3d 987,

994 (9th Cir. 2010) (citing Paracor Fin., Inc. v. Gen. Elec.

Capital Corp., 96 F.3d 1151, 1164 (9th Cir. 1996)).

"'When an agreement contains a choice of law provision,

California courts apply the parties' choice of law unless the

analytical approach articulated in § 187(2) of the Restatement

(Second) of Conflict of Laws . . . dictates a different result.'"

Bridge Fund Capital, 622 F.3d at 1002 (quoting Hoffman v. Citibank

(S.D.), N.A., 546 F.3d 1078, 1082 (9th Cir. 2008); alteration in

original).  Under this approach,

> The law of the state chosen by the parties to
> govern their contractual rights and duties
> will be applied . . . , unless either
>
> (a) the chosen state has no substantial
> relationship to the parties or the transaction
> and there is no other reasonable basis for the
> parties' choice, or
>
> (b) application of the law of the chosen state
> would be contrary to a fundamental policy of a
> state which has a materially greater interest

7

> than the chosen state in the determination of
> the particular issue and which . . . would be
> the state of the applicable law in the absence
> of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2). The California Supreme Court has recognized that this approach reflects "a strong policy favoring enforcement" of choice-of-law provisions. Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 464-65 (1992).

Here, Ohio has a direct connection to the parties because Cintas is headquartered there. This is sufficient to establish a "substantial relationship" between the parties and the chosen state. See id. at 467; Restatement (Second) of Conflict of Laws § 187 cmt. f (recognizing that a "substantial relationship" with the chosen state exists where "one of the parties is domiciled or has his principal place of business" there). Further, as other courts have recognized, Ohio's doctrine of unconscionability does not conflict with any "fundamental policy" of California. See Ramirez v. Cintas Corp., 2005 WL 2894628, at *4-*5 (N.D. Cal.) (rejecting plaintiffs' argument that the application of Ohio contract law to an arbitration agreement would "would necessarily violate a fundamental California policy"); Zeif v. Cintas Corporation No. 2, Civil Case No. 13-0413-JVS, Docket No. 17, at 5 (C.D. Cal. April 15, 2013) ("Although the exact parameters of unconscionability under Ohio law differ from those of California, they are similar enough such that the Court concludes that Ohio law on unconscionability is not contrary to a fundamental policy of California."). Plaintiff has not identified any conflict between Ohio's doctrine of unconscionability and a fundamental

1    policy of California.  Accordingly, the May 2012 employment

2    agreement -- and Plaintiff's argument that it is unconscionable --

3    must be examined under Ohio law.[1]

4          B.    Unconscionability under Ohio Law

5          Ohio's "unconscionability doctrine consists of two prongs:

6    '(1) substantive unconscionability, i.e., unfair and unreasonable

7    contract terms, and (2) procedural unconscionability, i.e.,

8    individualized circumstances surrounding each of the parties to a

9    contract such that no voluntary meeting of the minds was

10   possible.'"  Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.,

11   143 Ohio App. 3d 708, 718 (2001) (citing Dorsey v. Contemporary

12   Obstetrics & Gynecology, Inc., 113 Ohio App. 3d 75, 80 (1996)).  A

13   "plaintiff must prove a quantum of both prongs" to establish that

14   an arbitration agreement is unconscionable.  Bozich v. Kozusko,

15   2009 WL 5150264, at *2 (Ohio Ct. App.) ("A party seeking to

16   invalidate an arbitration clause on grounds of unconscionability

17   must establish that the provision is both procedurally and

18   substantively unconscionable.").

19

20         [1] Plaintiff argues that California law should govern the agreement

21   because this Court and the Ninth Circuit have both recently applied
     California law to determine whether certain arbitration agreements were

22   unconscionable.  See, e.g., Correa v. Firestone Complete Auto Care, 2013
     WL 6173651 (N.D. Cal.) ("Under California law, an arbitration agreement

23   is unenforceable if it is both procedurally and substantively
     unconscionable." (emphasis added)).  The cases he cites, however, are

24   inapposite because the relevant agreements in those case did not contain
     choice-of-law provisions and the parties did not dispute that the

25   agreements were governed by California law.  See Pokorny, 601 F.3d at
     994 ("Under California law, the choice-of-law rules differ depending on

26   whether the parties have included a choice-of-law agreement in their
     contract.").  Furthermore, even if California law did apply, the

27   arbitration would still be enforceable because Plaintiff has not
     established that the agreement was substantively unconscionable, as

28   explained below.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Plaintiff asserts that the May 2012 employment agreement is

2 both substantively and procedurally unconscionable.  Although he

3 relies entirely on California law -- and does not cite any Ohio

4 case or statutory law in his brief -- the Court nevertheless

5 considers his general arguments below.

6         1.    Substantive Unconscionability

7    Plaintiff contends that the arbitration provision is

8 substantively unconscionable because it lacks mutuality.  In

9 particular, he argues that the provision unduly favors Cintas by

10 allowing Cintas to seek declaratory or injunctive relief in a

11 judicial forum if the employee fails to abide by the agreement's

12 non-disclosure requirements.

13    This argument fails for two reasons.  First, under Ohio law,

14 "mutuality is not a requirement of a valid arbitration clause if

15 the underlying contract is supported by consideration."  Fazio v.

16 Lehman Bros., Inc., 340 F.3d 386, 397 (6th Cir. 2003) (citing

17 Joseph v. MBNA Am. Bank, N.A., 148 Ohio App. 3d 660, 664 (2002)).[2]

18 As noted above, Plaintiff received a pay raise in exchange for

19 signing the employment agreement.  See Sharpe Decl, Ex. A, at 2.

20 Thus, a lack of mutuality is not sufficient to establish that the

21 arbitration provision is substantively unconscionable here under

22 Ohio law.  See Raasch v. NCR Corp., 254 F. Supp. 2d 847, 855 (S.D.

23 Ohio 2003) (finding arbitration agreement enforceable even though

24

25

26         [2] Plaintiff cites various California cases for the proposition that a lack of mutuality in an arbitration agreement is evidence of substantive unconscionability.  However, the Sixth Circuit has

27 specifically noted that "there is no indication that Ohio courts have adopted the California rule" regarding mutuality.  Fazio, 340 F.3d at

28 396.

**United States District Court**
For the Northern District of California

1    it excluded coverage of "disputes over confidentiality, non-

2    compete agreements or intellectual property rights").

3         Second, the arbitration provision is not as one-sided as

4    Plaintiff represents.  Plaintiff fails to acknowledge, for

5    instance, that the provision allows employees to avoid binding

6    arbitration for certain claims, such as claims related to workers'

7    compensation and unemployment benefits.  Moreover, the clause that

8    Plaintiff highlights -- allowing Cintas to avoid arbitration for

9    claims arising from breaches of confidentiality -- is relatively

10   narrow and limited to a subset of Cintas's potential claims for

11   equitable relief.  All of Cintas's potential claims for monetary

12   relief (including those based on employee breaches of

13   confidentiality) remain subject to binding arbitration.  In short,

14   the provision provides both parties to the agreement with

15   reasonable, if narrow, exceptions to the general rule that all of

16   their claims must be arbitrated.  Thus, even under California law,

17   this provision would not be substantively unconscionable.  <u>Luafau</u>

18   <u>v. Affiliated Computer Servs., Inc.</u>, 2006 WL 1320472, at *6 (N.D.

19   Cal.) ("Because the agreement does not lack the requisite modicum

20   of bilaterality with regard to claims covered, the Court finds

21   that the coverage of the arbitration agreement is not

22   substantively unconscionable.").

23        Plaintiff next argues that the agreement's choice-of-law

24   clause -- which governs the entire agreement and not just the

25   arbitration provision -- is substantively unconscionable because

26   it selects Ohio, rather than California, as the state whose law

27   governs the agreement.  Plaintiff fails to explain how this

28   provision is commercially unreasonable.  <u>See</u> <u>Featherstone v.</u>

**United States District Court**
For the Northern District of California

1   Merrill Lynch, Pierce, Fenner & Smith, Inc., 159 Ohio App. 3d 27,

2   33 (2004) ("When considering substantive unconscionability, a

3   court should determine whether the terms of the contract are

4   commercially unreasonable.").  The choice-of-law provision does

5   not preclude the employee from asserting any claims under another

6   state's law, as Plaintiff seeks to do here, nor does it require

7   the employee to arbitrate any claims in Ohio.  Rather, it requires

8   that the agreement itself be construed under the law of Ohio, the

9   state where Cintas is domiciled.  This is not enough to render the

10  entire agreement substantively unconscionable under Ohio law.[3]

11  Nor would it be enough to render the agreement unconscionable

12  under California law given that the choice-of-law clause itself is

13  enforceable under California law.  Nedlloyd Lines, 3 Cal. 4th at

14  467 (recognizing that choice-of-law provisions should be enforced

15  when the chosen state has a connection to the parties, such as

16  "when 'one of the parties is domiciled' in the chosen state"

17  (citations omitted)).

18       Finally, Plaintiff argues that the arbitration provision is

19  unconscionable because it improperly shifts the costs of

20  arbitration to the employee.  To determine whether the costs of

21  arbitration are substantively unconscionable, Ohio courts engage

22  in a "case-by-case analysis of the individualized deterrent

23  effect" of those costs.  Garcia v. Wayne Homes, LLC, 2002 WL

24  628619, at *13 (Ohio Ct. App.).  This analysis focuses on the

25  claimant's "'ability to pay the arbitration fees and costs, the

26

27       [3] The situation would be different, of course, if the chosen state
    lacked any connection to the parties and had been selected to benefit a
28  specific party.

12

1 expected cost differential between arbitration and litigation in

2 court, and whether that cost differential is so substantial as to

3 deter the bringing of claims or cause arbitration to be an

4 unreasonable alternative to the judicial forum.'"  Moran v.

5 Riverfront Diversified, Inc., 197 Ohio App. 3d 471, 481 (2011)

6 (quoting Garcia, 2002 WL 628619, at *13).  Here, the arbitration

7 provision caps the employee's total arbitration costs at three

8 hundred dollars and even provides a fee waiver for indigent

9 employees.[4]  This is less than it would cost the employee to file

10 a complaint in either state or federal court.  Accordingly, the

11 arbitration costs imposed on the employee are not so great as to

12 render the arbitration agreement substantively unconscionable

13 under Ohio law.  California law would yield the same result.  King

14 v. Hausfeld, 2013 WL 1435288, at *18 (N.D. Cal.) (finding

15 arbitration agreement's fee-shifting provision enforceable where

16 it was both "mutual and not unduly burdensome" and did not impede

17 the employee's ability to vindicate his rights in California).

18 ───────────────────

19 [4] Specifically, the agreement states,

20 Employee's initial share of the arbitration filing
fee will not exceed one day's pay or $100,
whichever is less . . . .  The Arbitrator also
21 will have the authority to award either party
appropriate relief, including damages, costs and
22 attorney's fees, as available under relevant laws.
In no event, however, will the Arbitrator direct
23 the Employee to pay more than a total of $200 or
two days of Employee's pay, whichever is less,
24 toward the fees of the Arbitrator and the AAA.
Notwithstanding the above, upon Employee's showing
25 of indigence, as determined by the Arbitrator
under applicable law, any arbitration fee or cost
26 that would otherwise be paid by Employee
(including any arbitration fee or cost) shall be
27 paid by Employer.

28 Sharpe Decl., Ex. A, at 5-6.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1                    2.    Procedural Unconscionability

2         Plaintiff contends that the employment agreement was

3    procedurally unconscionable because it was a contract of adhesion

4    presented to him on a take-it-or-leave-it basis as a condition of

5    his continued employment.  This argument is not supported by the

6    evidence Plaintiff has submitted.

7         In particular, Plaintiff has not shown that he was forced to

8    sign the agreement as a condition of his continued employment.

9    While he stated in his declaration that he was "required to sign

10   this agreement in order to receive a raise," he never asserted

11   that he needed to sign it in order to keep his job.  Docket No.

12   23, M. Castro Decl. ¶ 3.  The agreement itself confirms this.  It

13   states that Cintas would give Plaintiff a raise for signing the

14   agreement but does not state that he was required to sign as a

15   condition of his continued employment.  Sharpe Decl., Ex A, at 2

16   ("As consideration for this Agreement, Employer . . . is

17   increasing Employee's rate of compensation.").  Given that

18   Plaintiff was already bound by the terms of an identical agreement

19   which he signed one year earlier, Cintas would have had little

20   incentive to condition his continued employment on the May 2012

21   agreement.

22        In any event, Ohio courts have made clear that merely

23   presenting a standardized arbitration agreement to a party of

24   lesser bargaining power on a take-it-or-leave-it basis is not

25   sufficient to establish procedural unconscionability.  Deck v.

26   Miami Jacobs Bus. Coll. Co., 2013 WL 394875, at *5 (S.D. Ohio)

27   (rejecting plaintiffs' argument "that the arbitration clause is

28   procedurally unconscionable because it was provided to them on a

United States District Court
For the Northern District of California

1  'take-it-or-leave-it basis' within a standardized form and thus

2  was an adhesionary clause"); <u>Alexander v. Wells Fargo Fin. Ohio 1,</u>

3  <u>Inc.</u>, 2009 WL 2963770, at *3 (Ohio Ct. App.) ("[Plaintiff] argues

4  that the arbitration provision was procedurally unconscionable

5  because it was drafted by only one party and was presented on a

6  'take-it-or-leave-it' basis.  This is not sufficient to

7  demonstrate procedural unconscionability.").  Rather, to show

8  procedural unconscionability, "'there must be some evidence that,

9  in consequence of the imbalance, the party in the weaker position

10 was defrauded or coerced into agreement to the arbitration

11 clause.'"  <u>Stachurski v. DirecTV, Inc.</u>, 642 F. Supp. 2d 758, 768

12 (N.D. Ohio 2009) (quoting <u>Hawkins v. O'Brien</u>, 2009 WL 50616, at *4

13 (Ohio Ct. App.)).  Plaintiff has not presented evidence of fraud

14 or coercion here because his employment was never in jeopardy and

15 he signed an identical agreement a year earlier.

16     Plaintiff next argues that the agreement was procedurally

17 unconscionable because Cintas failed to provide him with a copy of

18 the agreement and the AAA rules incorporated by reference therein.

19 <u>See</u> Castro Decl. ¶ 6.  Although this failure offers some evidence

20 of procedural unconscionability,[5] it does not justify invalidating

21 the arbitration agreement here.  As previously noted, Plaintiff

22 signed an identical version of the employment agreement one year

23 earlier and signed similar versions in 2006, 2009, and 2010.  All

24

25     [5] <u>See</u> <u>Eagle v. Fred Martin Motor Co.</u>, 809 N.E.2d 1161, 1177-78
   (Ohio Ct. App. 2004) (finding procedural unconscionability where, among
   other problems, the plaintiff "was not provided with a copy of the
26 arbitration clause or contract"); <u>Jamison v. LDA Builders, Inc.</u>, 2013 WL
   2152748, at *9 (Ohio Ct. App.) (finding evidence of procedural
27 unconscionability where one party failed to provide a copy of the
   arbitration agreement to the other until several months after the
28 parties signed the agreement).

**United States District Court**
For the Northern District of California

of these documents were kept in his personnel file and he could

have asked to review the documents at any time during his

employment.  Vig Decl. ¶¶ 3-4.  Simply put, Plaintiff had multiple

opportunities to read the arbitration provision and to request

clarification of its terms, both before and after he signed it.

This minimizes the procedural unfairness associated with Cintas's

failure to provide him with a copy of the agreement and

distinguishes this case from those he cites in his brief.  See,

e.g., Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 923 (9th Cir.

2013) (finding an arbitration agreement procedurally

unconscionable under California law because defendant-employer

failed to provide plaintiff-employee with the terms of its

arbitration policy "until her employment orientation, three weeks

after the policy came into effect").

In sum, the limited evidence of procedural unconscionability

that Plaintiff has produced is not sufficient to preclude

enforcement of the arbitration provision under Ohio law,

especially in light of his failure to show that the agreement

itself was substantively unconscionable.  See Harrison v.

Winchester Place Nursing, 996 N.E.2d 1001, 1009-10 (Ohio Ct. App.

2013) (recognizing evidence of procedural unconscionability where

"arbitration agreement was 'buried' in the middle of the document

and also referenced rules and procedures which were only available

online" but nevertheless finding arbitration provision enforceable

due to a lack of substantive unconscionability).  This outcome

would be the same under California law.  Pinnacle Museum Tower

Ass'n v. Pinnacle Mkt. Dev., LLC, 55 Cal. 4th 223, 247 (2012)

(recognizing that substantive and procedural unconscionability

16

1  must both be present to find an arbitration agreement

2  unconscionable).

3      C.   PAGA Claims

4      Plaintiff argues that, even if his other claims must be

5  arbitrated under the agreement, his PAGA claims cannot legally be

6  subject to arbitration.  For support, he relies on a recent line

7  of California cases holding that employment agreements which

8  subject an employee's PAGA claims to binding arbitration are

9  unconscionable.  See, e.g., Brown v. Ralphs Grocery Co., 197 Cal.

10 App. 4th 489, 494 (2011) ("We also hold that the recent decision

11 of the United States Supreme Court in [Concepcion], holding that

12 California decisional law invalidating class action waivers in

13 consumer arbitration agreements is preempted by the [FAA], does

14 not apply to representative actions under the PAGA.").

15     These cases are inapplicable for the same reasons that all of

16 the other California cases Plaintiff cites are inapplicable: the

17 arbitration agreement must be construed under Ohio law, not

18 California law.  Although Plaintiff's claims against Cintas will

19 ultimately be governed by California law, the threshold question

20 of whether or not those claims may be lawfully subjected to

21 binding arbitration is a question of contract law governed by Ohio

22 law.  All of the cases Plaintiff cites were decided under

23 California's doctrine of unconscionability under a rule created by

24 California courts.  Ohio courts do not appear to follow the same

25 rule regarding the arbitrability of private attorney general

26 actions.  See Price v. Taylor, 575 F. Supp. 2d 845, 854 (N.D. Ohio

27 2008) (rejecting plaintiff's argument "that the arbitration

28 agreement is unconscionable because it limits her legal remedies,

17

**United States District Court**
For the Northern District of California

1    specifically the ability to bring a class action, join in claims

2    with others, or act as private attorney general").

3         Even under California law, the question of whether PAGA

4    claims may be subjected to binding arbitration remains unsettled.

5    Plaintiff himself acknowledges that California's lower courts are

6    divided on whether employment agreements that subject PAGA claims

7    to arbitration are enforceable and the California Supreme Court

8    has recently granted a petition for review to resolve this

9    division.[6]   Iskanian v. CLS Transp. of Los Angeles LLC, 147 Cal. Rptr.

10   3d 324 (2012), granting review of 206 Cal. App. 4th 949 (2012).   Thus,

11   even if the arbitration agreement in this case were governed by

12   California law, it is not clear that it would be unconscionable

13   merely because it subjects PAGA claims to binding arbitration.

14   III. Scope of Arbitration Provision

15        Plaintiff asserts that his claims are not subject to binding

16   arbitration because the employment agreement's arbitration

17   provision "only pertains to the Agreement itself and not to

18   anything outside the Agreement."   Docket No. 23, Pl.'s Opp., at 4.

19   He argues that, because his claims in this suit are not based on

20   the agreement itself -- which, according to Plaintiff, focuses

21   primarily on employees' non-disclosure obligations -- the claims

22   fall outside the scope of the arbitration provision.

23        This interpretation of the agreement is untenable.   The

24   arbitration provision expressly states that it encompasses any

25   dispute arising from the "Employer's violation of any provision of

26

27        [6] This Court previously acknowledged this division among lower
     courts, without taking a position, in Davis v. Nordstrom, Inc., 2012 WL
28   4478297, at *7 n.1 (N.D. Cal.).

1   this Agreement <u>or any law, regulation or public policy</u>."  Sharpe

2   Decl., Ex. A, at 5 (emphasis added).  It also states that it

3   covers the "Employee's rights or claims arising out of or in any

4   way related to Employee's employment with Employer" as well as any

5   "rights or claims arising under . . . <u>state or local laws</u>

6   <u>regarding employment</u>."  <u>Id.</u> (emphasis added).  This language --

7   which Plaintiff fails to discuss or even acknowledge in his

8   opposition brief -- plainly encompasses the California Labor Code

9   and UCL claims that Plaintiff has asserted in this action.  <u>See</u>

10  <u>Zeif</u>, Civil Case No. 13-0413-JVS, Docket No. 17, at 3 (reviewing

11  identical arbitration provision and concluding that plaintiff's

12  California Labor Code claims and UCL claims "clearly fall within

13  the scope of the claims the parties agreed to submit to

14  arbitration").  Accordingly, Plaintiff's claims are subject to

15  arbitration under the employment agreement.

CONCLUSION

17      For the reasons set forth above, Defendant's motion to stay

18  (Docket No. 19) is GRANTED.  This action is stayed pending

19  arbitration, which must be diligently pursued.  Nothing in this

20  order shall be considered a dismissal or disposition of this case

21  and, should further proceedings in this litigation become

22  necessary or desirable, any party may move to restore the case to

23  the Court's calendar.  This order administratively terminates this

24  action.

25      IT IS SO ORDERED.

26

27  Dated: 4/11/2014                    CLAUDIA WILKEN
                                         United States District Judge
28

19

United States District Court
For the Northern District of California